OPINION
{¶ 1} Jamise Sullivan was indicted for burglary, a third degree felony. After a bench trial, the trial court found Sullivan not guilty of burglary, but guilty of trespass, a fourth degree misdemeanor. The trial court was not persuaded that Sullivan entered her mother's residence to commit a theft offense, although the court determined that she knowingly entered the residence *Page 2 
without privilege to do so. R.C. 2911.21(A)(1). The court sentenced Sullivan to five years of community control sanctions.
 I. {¶ 2} In her first assignment of error, Sullivan contends that her conviction was against the manifest weight of the evidence.
 {¶ 3} Sullivan was found guilty of trespassing at her mother's home at 4277 Briar Place in Harrison Twp., Montgomery County. On October 8, 2006, Sullivan gained access to the interior of her mother's home by breaking a window. Sullivan testified, in effect, that her actions were justified because she was a tenant of her mother and entitled to enter the home to retrieve her personal property. The trial court found that Sullivan was not a tenant at the time of the break-in. The issue before us then is whether that finding was against the manifest weight of the evidence.
 {¶ 4} The two principal witnesses on this issue were Sullivan and her mother, Jacqueline Davis.
 II. {¶ 5} Davis testified on behalf of the State. She said that in early 2006, she gave Sullivan and her husband, who were homeless, a place to stay. Their stay was "meant to be brief and temporary." She stated that she did not rent her basement living quarters to Sullivan, and that any money she received from Sullivan or her husband was to pay off bail that Davis had previously posted for her daughter. She also testified that the transfer to her from her daughter of a 1996 Nissan Sentra was not intended as rent. In mid-June, Crisis Care removed Sullivan from the home to the psychiatric unit of a local hospital. Sullivan left the hospital three days *Page 3 
later, but did not return to Davis' home to live. When Sullivan came for her belongings, Davis told her she was not welcome. Davis also changed the door locks and home security alarm codes.
 {¶ 6} Sullivan testified that in exchange for living at her mother's home, she agreed to do maintenance and repairs, and "that agreement was extended to indefinite when I signed my car over to her as payment for rent for the duration of the time I would stay there." Sullivan said her mother also received several hundred dollars as "contributions to the household." Davis obtained an eviction order September 22 from the Dayton Municipal Court, and Sullivan was told she had seven days to retrieve her belongings from her mother's home. When she enlisted Detective Saunders of the sheriff s office to escort her, he told her the eviction order was invalid because her mother's home was outside the jurisdiction of the Dayton Municipal Court. After Sullivan got the Dayton Municipal Court order vacated, she thought she had a right to be at her mother's home and went to her mother's home October 8 to retrieve her belongings. Sullivan conceded that she had no lease, that her copy of the certificate of title to her mother did not reflect it was for rent, and that she had no rent receipts. She also conceded that she knew her mother didn't want her at her home, and that a civil protection order made it clear she was not to be there.
 III. {¶ 7} At the close of the evidence, the trial court expressly determined that Davis and Sullivan had no landlord-tenant relationship. The court noted, inter alia, the absence of a written lease, the absence of an express oral lease, and insufficient specifics for an implied lease. The court also observed that it was unclear from the testimony that the transfer of the car was *Page 4 
for rent. The trial court did not comment on the credibility of Davis or Sullivan, but given the deference an appellate court must accord the trial court as fact finder, we cannot say its determination that Sullivan was not Davis' tenant on October 8 was against the manifest weight of the evidence. Furthermore, given the undisputed evidence that Sullivan knew she was unwelcome at her mother's home, the court's finding that she was guilty of trespass, as defined above, was not against the manifest weight of the evidence.
 {¶ 8} The first assignment is overruled.
 IV. {¶ 9} In her second assignment of error, Sullivan complains that she was sentenced with reference to R.C. 2929.11 and 2929.13 — which pertain to felony sentencing — rather than R.C. 2929.21, 2929.22 and 2929.25
— which pertain to misdemeanor sentencing.
 {¶ 10} We agree with the State that Sullivan has failed to demonstrate more than harmless error. The purposes of felony and misdemeanor sentencing are the same — see R.C. 2929.11 and 2929.21 — and the factors to be considered in achieving those purposes are similar, although the misdemeanor factors are set out in more abbreviated fashion than the felony factors. See R.C. 2929.12, 2929.22.
 {¶ 11} The trial court declined to impose any jail time, although trespass is punishable by up to thirty days incarceration. A sentence of up to five years of community control sanctions is permitted by R.C. 2929.25 and, on this record, that sentence was well within the discretion of the trial court to impose.
 {¶ 12} The second assignment of error is overruled.
 V. *Page 5 {¶ 13} The judgment will be affirmed.
 FAIN, J. and GRADY, J., concur. *Page 1